**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| | * |
| **JOSE OMAR FLORES PERLA,** | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | |
| | *      **Case No.: PWG-16-95** |
| **JACQUELINE IVONNETH** | |
| **PERLA VELASQUEZ,** | * |
| | |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Petitioner Jose Omar Flores Perla (the "Father") filed a verified petition against Respondent Jacqueline Ivonneth Perla Velasquez (the "Mother"), his former wife, seeking the return of the parties' minor child, O.E.F.P. (the "Child"), to El Salvador, from the United States where the Mother allegedly wrongfully removed and retained him on or after April 27, 2014. Pet. ¶ 1, ECF No. 1.  The Mother filed a Motion to Dismiss or, in the Alternative, to Transfer Venue, ECF No. 31.  I held a hearing on June 29 and 30, 2016 and issued an Order granting the motion, transferring the case to the United States District Court for the Southern District of Texas in Houston.  ECF No. 47.  This Memorandum Opinion memorializes that hearing.

**<u>Factual and Procedural Background</u>**

The Child was born in El Salvador on March 12, 2011, and he lived in El Salvador. Pet. ¶¶ 5–6 & Ex. 2, ECF No. 1-2.  The parties divorced on May 29, 2013; the court in El Salvador granted the Mother custody and the Father "liberal visitation," which he claims he exercised. *Id.* ¶¶ 8, 10.  On April 29, 2014, the Father learned that the Mother left El Salvador with the Child,

with the intent to go to the United States. *Id*. ¶ 16.   The Father did not consent to the Child's removal from the country.  *Id.* ¶¶ 29-31.

The Mother and the Child entered the United States in May 2014 and ICE/DHS detained them at the Texas–Mexico border "and placed [them] immediately into removal proceedings." Stmt. 1, ECF No. 29.   But, following a "credible fear interview . . . it was determined that the Respondent and the child feared returning to their native country of El Salvador based on the information provided about Jose Omar Flores Perla, Petitioner."  *Id.*[1]   They were allowed to remain in Texas under the supervision of ICE/DHS.

On May 5, 2014, the Father sought the return of the Child through the El Salvador courts and the Attorney General of El Salvador. Pet. ¶¶ 18–20 & Ex. 3–5, ECF Nos. 1-3 – 1-5. On May 20, 2014, the Father filed an Application for Return of the Child with the Central Authority of El Salvador, which was submitted to the Central Authority of the United States of America under the Hague Convention. *Id.* ¶¶ 20–21 & Ex. 6, ECF No. 1-6. The Second Family Court of San Miguel temporarily revoked the Mother's custody on June 24, 2014.  *Id.* ¶ 22 & Ex. 4.

Petitioner, who resides in El Salvador, filed suit in this Court with the assistance of counsel, who is providing representation that is largely pro bono. He filed his Petition on January 11, 2016, alleging that the Child was in Maryland, and requesting that the Court order the return of the Child to El Salvador.  Pet. ¶¶ 40-41.  I promptly entered an Order to Show Cause, ECF No. 9-1, on January 13, 2016.  Petitioner had trouble locating Respondent but ultimately successfully served her by mailing via first class mail to her last known residences in Maryland

---

[1] Exhibit 1 to Respondent's Motion to Dismiss or Transfer is a police report that the Mother filed against the Father in El Salvador.  ECF No. 32.

and last known residence in Texas on March 24, 2016 and serving a person of suitable age and discretion at her last two known places of employment on March 28, 2016. ECF Nos. 19, 20, 21.

The Mother and the Child are currently in a "supervision program" in Texas and have a final merits hearing on their asylum petitions scheduled for November 2019.  Stmt. 1–2.  They live in Houston, Texas with the Mother's new husband, a U.S. citizen.  *Id.* at 1. They have lived in Houston since moving to the United States, except for a period of time from Spring 2015 until early January, 2016 that they spent in Maryland for Respondent to care for her mother, Sandra Velasquez, who lives in Maryland.  *Id.* at 2.  They need prior DHS approval to leave Texas.  *Id.* at 1–2.  Respondent's counsel has her passport.  *Id.*

Respondent moved to dismiss or transfer the Petition on the basis that the Child was in Texas, not Maryland, when the Father filed the Petition.  The parties fully briefed the motion, ECF Nos. 34, 38, and presented evidence at the hearing on June 29 and 30, 2016.

<u>**International Child Abduction Laws**</u>

The Petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), T.I.A.S. No. 11,760 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10,493 (1986), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9901 *et. seq.* (2001).[2] Pet. ¶ 1. "The United States ratified the Hague Convention in 1988, and Congress implemented the Convention that same year through the International Child Abduction Remedies Act (ICARA). 102 Stat. 437, 42 U.S.C. §§ 11601–11610 [22 U.S.C. § 9901 *et seq.*]."  *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1229 (2014).  As of June 1, 2007, El Salvador also is a signatory to the Convention. Hague

---

[2] The Petition provides the earlier cites, 42 U.S.C. § 11601 *et seq*; the statutes subsequently were transferred to Title 22 of the United States Code.

Abduction   Convention   Country   List,   available   at:   http://travel.state.gov/content/ childabduction/en/country/hague-party-countries.html (last accessed April 21, 2016).

The Convention has "two primary objections." *Lozano*, 134 S. Ct. at 1228-29.  First, its "'central operating feature,'" *id.* (quoting *Abbott v. Abbott*, 560 U.S. 1, 9 (2010)), is "'to secure the prompt return of children wrongfully removed to or retained in any Contracting State.'"  *Id.* (quoting Hague Convention Art. 1).  The second is "'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Id.* (quoting Hague Convention Art. 1).  Pursuant to Article 12 of the Convention, "when a court receives a petition for return within one year after the child's wrongful removal, the court 'shall order the return of the child forthwith.'" *Id.*

> The return remedy is not absolute. Article 13 excuses return where, for example, the left-behind parent was not "actually exercising" custody rights when the abducting parent removed the child, or where there is a "grave risk" that return would "place the child in an intolerable situation." Hague Convention, Arts. 13(a)–(b) . . .. A state may also refuse to return the child if doing so would contravene "fundamental principles ... relating to the protection of human rights and fundamental freedoms." Art. 20. . ..
>
> . . ..
>
> . . .[ICARA] instructs courts to "decide the case in accordance with the Convention." § [9903](d). Echoing the Convention, ICARA further provides that "[c]hildren who are wrongfully removed ... are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." § [9901](a)(4). Finally, ICARA requires the abducting parent to establish by a preponderance of the evidence that Article 12's exception to return applies. § [9903](e)(2)(B).

*Lozano*, 134 S. Ct. at 1228-29.  As noted, the Father alleges that the Child was wrongfully removed and seeks his prompt return.

### Where a Petition under ICARA May Be Filed in the United States

"The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." 22 U.S.C. § 9003(a).  When a

child is abducted, a person seeking that child's return "may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction *in the place where the child is located at the time the petition is filed.*"  22 U.S.C. § 9003(b) (emphasis added).  Section 9003(a) clearly confers jurisdiction; whether § 9003(b) pertains to jurisdiction or venue is less clear.

The parties' briefing and my independent research indicate that a handful of cases refer to this statute as pertaining to venue.  In *Miller v. Miller*, 240 F.3d 392 (4th Cir. 2001), although venue was not challenged, the Fourth Circuit treated § 9003(b) as a venue provision in dicta when it observed that the petitioner originally filed suit in the United States District Court for the Western District of New York, but "[t]he action was thereafter transferred to the Western District of North Carolina, where venue properly lies."  *Id.* at 397 (citing 22 U.S.C. § 11603(b), now § 9003(b)).  In *East Sussex Children Services v. Morris*, an ICARA case brought to return a child to the United Kingdom, where again venue was not at issue, the Northern District of West Virginia noted:

> This Court has jurisdiction pursuant to The . . . Hague Convention[] and the . . . ICARA[]. The district courts of the United States have been granted original jurisdiction over actions arising under the Hague Convention. 42 U.S.C. § 11603. Venue is appropriate because ICARA provides that a Hague Convention petitioner can bring a Hague Convention action only in the place where the child is located. 42 U.S.C. § 11603. In this case, S.A.M. resides in Hedgesville, West Virginia. Therefore, she is located in the Northern District of West Virginia.

No. 12-141, 2013 WL 704660, at *1 (N.D. W. Va. Feb. 27, 2013).  Likewise, in *Saldivar v. Rodela*, 879 F. Supp. 2d 610, 613 (W.D. Tex. 2012), an ICARA case brought to return a child to Mexico, venue was not a contested issue.  There, the Western District of Texas stated:

> The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this matter arises under the Convention and ICARA, the implementing legislation. Pursuant to ICARA, state and federal district courts have concurrent original jurisdiction over actions arising under the Convention. 42 U.S.C. § 11603(a).

. . .Venue is proper because this Court 'is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed,' which was El Paso County, Texas, within the jurisdiction of the United States District Court for the Western District of Texas, El Paso Division. *See* 42 U.S.C. § 11603(b).

*Saldivar*, 879 F. Supp. 2d at 613. In *Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 862 (N.D. Ill. 2001), a suit brought in Illinois federal court by a father who was a citizen of Italy, the court stated that it "ha[d] jurisdiction pursuant to 42 U.S.C. § 11603, and the case is properly brought here because [the child] is now located in Chicago. 42 U.S.C. § 11603(b)."

In *Skolnick v. Wainer*, No. 2013-4694 WFK MDG, 2013 WL 5329112, at *1 (E.D.N.Y. Sept. 20, 2013), the court declined to decide whether 22 U.S.C. § 9003(b) (the successor to 42 U.S.C. § 11603(b)) provided for jurisdiction or venue because the parties consented to transfer the case from New York to Connecticut.  Nonetheless, it recognized the issue and the split in the courts, noting that some "courts treated dismissal under § 11603(b) to be 'jurisdictional' in nature," and dismissed where the child was not present, while others, such as *Saldivar* and *East Sussex Children*, "have referred to the provision as concerning venue."  None of the foregoing cases is particularly helpful because in each, either the facts were unclear regarding the child's location and the parties agreed to where the action should be, or the child was present where the petitioner filed suit, such that the court clearly had venue and jurisdiction.

Other courts have stated that only the court where the child is located has jurisdiction. *See, e.g.*, *Gee v. Hendroffe*, No. 13-CV-1582-JCM-NJK, 2014 WL 60325, at *5 (D. Nev. Jan. 7, 2014) ("Under ICARA, jurisdiction exists only where the children are physically present at the time of filing."); *Olangues v. Kousharian,* 177 Fed. App'x 537, 538 (9th Cir. 2006) ("The district court properly dismissed this claim for lack of jurisdiction because at the time Olagues filed his action the children were in New Zealand. *See* 42 U.S.C. § 11603(b) (authorizing commencement of ICARA proceedings in a court 'which is authorized to exercise its jurisdiction in the place

where the child is located at the time the petition is filed.').")); *Diorinou v. Mezitis,* 132 F. Supp. 2d 139, 145–46 (S.D.N.Y. 2000) ("[T]he Greek courts adjudicating Dr. Mezitis' petition had jurisdiction under the Hague Convention, since the children were located in Greece when his petition was filed there."); *Espinoza v. Mattoon,* No. 09-0381-JCC, 2009 WL 1919297, at *2 (W.D. Wash. June 30, 2009) ("In this case, plaintiff's child is physically located in Canada. Accordingly, this Court lacks jurisdiction to hear this matter . . . .").

The labels of "venue" and "jurisdiction" are not particularly helpful in this context. What is helpful is that while § 9003(a) says that all United States district courts have jurisdiction, § 9003(b) clearly states that the place where that jurisdiction is to be exercised is "where the child is located at the time the petition is filed." 22 U.S.C. § 9003(b).  Moreover, it is clear—and the Father's counsel agrees—that if the Child was in Texas on January 11, 2016, when Petitioner filed suit, it would not have been filed here, as the clear intent of the statute is for the petition to be filed where the child is located at the time of filing.  *See* 22 U.S.C. § 9003(b).  Neither the Fourth Circuit nor this Court has defined "located" in the context of the ICARA, but the parties agree that "located" refers to where the Child was on January 11, 2016.  Elsewhere it is well-established that

> "[l]ocated" under ICARA does not require a showing of residency but contemplates the place *where the abducted children are discovered. See Lops v. Lops,* 140 F.3d 927, 937 (11th Cir.1998) (interpreting 42 U.S.C. § 11603(b)); *see also Holder v. Holder,* 305 F.3d 854, 869 n. 5 (9th Cir. 2002) (approving this "common-sense" definition in the ICARA and Hague Convention context, "concerned as they are with the Hague Convention's consistent application across borders").

*Skolnick*, 2013 WL 5329112, at *1 (emphasis added); *see Espinoza*, 2009 WL 1919297, at *1 (same); *Gee*, 2014 WL 60325, at *5 ("[T]he word 'located,' as used within the context of ICARA, has a more particular and exacting meaning than a 'traditional residency test,' which is

generally more broad. . . . Under ICARA, jurisdiction exists only *where the children are physically present* at the time of filing." (emphasis added)).

## Standard of Review

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, when a defendant argues, as the Mother does in this case, that the allegations in the complaint are untrue, "'the Court may . . . consider matters beyond the allegations in the complaint.'" *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013) (quoting *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010)).  In this instance, the Court "'regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[ ] the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac Ry. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)).  The burden is on Petitioner to prove the existence of subject matter jurisdiction by a preponderance of the evidence.  *K & S Real Props., Inc. v. Olhausen Billiard Mfg., Inc.*, No. ELH-15-1199, 2016 WL 3162799, at *7 (D. Md. June 7, 2016) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

## Discussion

According to Petitioner, this Court has jurisdiction because when Petitioner filed suit on January 11, 2016, he believed (based on information obtained through the investigative services of the United States Department of State) that the Child was "currently physically located at 8851 Garland Avenue, Apt. 301, Silver Spring, Maryland 20901."  Pet. ¶¶ 3, 28, 33.  The Mother insists that this Court does not have jurisdiction because she and the Child, who had been residing in Maryland temporarily for Respondent to care for her mother, who was suffering from lupus, left Maryland and returned to Texas on January 4, 2016, one week before the Father filed

suit.   Resp.'s Mot. & Mem. 5.[3]   On that basis, Respondent moves to dismiss for lack of jurisdiction.

At the hearing, the Father offered evidence that the Child was in Maryland on January 11, 2016.  Significantly, that evidence did not consist of eyewitness testimony that the Child was in Maryland at the time the Petition was filed.  Rather, it included documentary and testimonial evidence from administrators at the Child's school, the most important of which is evidence introduced from school records.  Petitioner's Exhibit 4 is the daily absence bulletin from August 31, 2015 to June 17, 2016 from the Head Start program at New Hampshire Estates Elementary School in Montgomery County, Maryland, where the Child was enrolled while living in Maryland.  Of import, this is an absence report, listing the days that school was in session and the Child was not present and implying the Child's presence on the unlisted days that school was open.  The report shows that the Child was not present on January 4, 7, 19, 20, or 21, 2016, suggesting that the Child was present on January 5, 6, 8, and 11–15, 2016. School was closed for a holiday on January 18, 2016 and due to weather on January 22–29, 2016.  The report also indicates that the Child was absent on February 1–5, 8–10, and 12, 2016, supporting an inference that he was present on February 11, 2016 because he is not listed as "absent" on that date.  Although New Hampshire Estate Elementary School Principal Robert Geiger and Attendance Secretary Genara Romero-Cruz both testified about the attendance tracking system, neither testified based on personal knowledge of the Child's presence at school.

Although not direct evidence, the absence reports are documentary evidence that is admissible for the proposition that the Child was in school on the dates not listed, if school was open.  Fed. R. Evid. 803(8)(a)(i).  The Affidavit of Romero-Cruz, ECF No. 34-1, somewhat

---

[3] Respondent filed the Motion and Memorandum as one document without page numbers.  The page numbers cited herein refer to the page numbers assigned by CMECF.

undermines the accuracy of these records, however. Romero-Cruz stated that the Child has not returned to school since February 3, 2016, contradicting the inference that can be drawn from the absence report that the Child was present on February 11, 2016. Additionally, Geiger and Romero-Cruz's testimony was not clear on how promptly absences were entered on the report. They acknowledged that sometimes up to twenty-four hours passed before an entry was made. This certainly was not an infallible system. Thus, the weight of the documentary evidence of the Child's presence in school in Maryland in January 2016 and on February 11, 2016 is called into question, Fed. R. Evid. 104(e), and directly contradicted by Romero-Cruz's Affidavit.

The grandmother's statement, offered through Romero-Cruz's testimony that the grandmother contacted the school to say that the Child could no longer attend school because the Father was looking for him and the Mother, was admitted into evidence pursuant to Fed. R. Evid. 801(d)(2)(C). Yet, the grandmother made the statement on February 3, 2016, well after Petitioner filed suit, such that it was well known that he was searching for them at that time.

The Father offered photographs of the Child in a snowstorm as evidence that the Child was in Maryland in February 2016, as well as an official publication of the National Weather Service, Pl.'s Ex. 3, which discusses Mid-Atlantic weather and a blizzard on January 22–23, 2016. Petitioner testified that the photograph was posted on Facebook after this storm. His counsel argued that this evidence showed that the Child was present in Maryland after January 11, 2016. Yet, this is circumstantial evidence, contradicted by the Mother's testimony that the photograph was from Spring 2015 when they arrived in Maryland, and the fact that no weather records were offered for that period to compare with the weather records for January–February, 2016.

The Child's Mother testified that the Child was in Maryland as late as January 3, 2016. She testified under penalty of perjury that she came to Maryland in Spring 2015 to care for her mother who had lupus, expecting to be here only for a short period. She said that her visit lasted longer than expected, but by the end of 2015, she concluded that she could return to Houston.

The Mother testified emphatically that the Child in Houston on January 11, 2016, the date the Petition was filed in this Court. She testified that her husband, Simon Campos III, picked her up and they drove to Texas, leaving on January 3, 2016 and arriving at dawn on January 4, 2016. Thereafter, she and Child did not return to Maryland until they arrived for the hearing in late June, 2016. She testified that the Child had a dental appointment in Houston on January 6, 2016, and that she had a medical appointment in Houston on January 11, 2016. Respondent offered the Child's January 6, 2016 dental bill for services rendered in Houston. ECF No. 31-2.

The Mother offered additional evidence of the Child's presence in Texas on January 11, 2016. The first document is an unsworn statement of Medical Assistant Vanessa Orta, stating that Respondent had an "Annual Exam" at Dr. Nicolas Xydas Women's Center, P.A. in Houston on January 11, 2016. ECF No. 38-2. It was not signed under penalty of perjury and it does not constitute an affidavit or declaration; therefore I give it less weight. She also offered a January 11, 2016 receipt for a payment of $50 for her visit from that office, which corroborates her testimony that she was in Texas on January 11, 2016.

The Mother also testified that she works for Met Company, Inc., a Houston company. She introduced paychecks for work she performed for the company, payable to her at a Houston address, beginning with the period January 4–10, 2016, ECF No. 31-1. She also introduced an unsworn statement, which as noted receives significantly less weight than a sworn statement, from Sam Osmanagich, who stated that Respondent "returned to work January 7, 2016" at Met

Company, in Houston, Texas, where he is President.   ECF No. 38-3.   The signature on the checks and the affidavit are the same, and this statement corroborates the Mother's testimony. Petitioner's counsel argues that the checks are curious for lack of withholding and because they are actual checks, not stubs. Respondent's counsel argued that the Mother was an independent contractor, which accounts for the absence of withholding.

Campos also provided direct evidence under oath. He testified that he drove to Maryland on January 1, 2016, picked up the Mother and the Child on January 3, 2016, returned with them to Texas on January 4, 2016, and thereafter saw the Child in Texas every day from then through the critical date of January 11, 2016. This is direct evidence of the Child's whereabouts.

The Mother also offers statements from Beatriz Hernandez de Campos, Rosalina Serrano Campos, and Plasido Campos, stating that they saw the Mother and Child in Texas on January 5 and 9, 2016.   ECF No. 38-4.   I accord these statements minimal weight because they were not made under penalty of perjury.

This evidence introduced is very close. The school officials who testified that the Child attended school until February 3, 2016 had no reason to be untruthful.   Their testimony and records are helpful but far from conclusive. There was no direct evidence from a classroom teacher that the Child was present on January 11, 2016 or later, and Romero-Cruz's Affidavit that the Child left school on February 3, 2016 contradicts the absence records, which indicate that the child was present on February 11, 2016. Campos's testimony was direct evidence that the Child left Maryland on January 3, 2016 and was in Texas thereafter; the Mother's testimony corroborates it.   But they obviously have an interest in the outcome of this case, which affects the weight their testimony deserves.

But to find that the Child was in Maryland on January 11, 2016, I would have to find both the Mother and Campos committed perjury and that this was not true, believing instead school records that are somewhat internally contradictory.[4]   Moreover, I would have to find that two lawyers who are officers of the Court fabricated evidence in the unsworn statements they prepared, jeopardizing their licenses and livelihood and their clients' liberty. More likely than not, when the sworn testimony and other evidence that the Mother offered is balanced against the school records and other evidence that the Father offered, the Child was in Texas, not Maryland, on January 11, 2016.   Regardless whether 22 U.S.C. § 9003(b) pertains to jurisdiction or venue, the proper place for this proceeding to have been filed was Texas, not Maryland. *See* 22 U.S.C. § 9003(b).

Petitioner has not carried his burden of proving jurisdiction.  *See Evans*, 166 F.3d at 647; *K & S Real Props., Inc.*, 2016 WL 3162799, at *7.  On that basis, this Court can dismiss for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), or if it is in the interest of justice, transfer to the Southern District of Texas, where the child is located and, more significantly, was located on January 11, 2016, when Petitioner filed suit.  *See* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed . . . .").  "By its own language § 1631 . . . serves to 'remedy' a 'good faith mistake' by a litigant." *LeBlanc v. Holder*, 784 F.3d 206, 209–10 (4th Cir. 2015).  Here, it appears that Petitioner filed suit in Maryland based on a "'good faith mistake'" – he believed that the Child was in Maryland based on information

---

[4] Should it become apparent in the proceedings as they go forward that, in fact, the Child was not in Houston on the days that the Mother and Campos testified that he was, I will bring this to the attention of the United States Attorney.

reasonably believed to be reliable and the simple fact that the Child *was* in Maryland days before the Father filed suit.  *See id.*  Additionally, "whether or not the suit has any possible merit bears significantly on whether the court should transfer, and if it does not, the court should not waste the time of another court by transferring the matter." *Sorcia v. Holder*, 643 F.3d 117, 123 (4th Cir. 2011), *as amended* (July 21, 2011) (citations and quotation marks omitted).  At this juncture, it is not evident that Petitioner's suit is without merit, and he should have the opportunity to litigate it.  *See id.*  Therefore, this Court should transfer to the Southern District of Texas.  *See id.*; 28 U.S.C. § 1631.

Moreover, even if § 9003(b) pertains only to venue and this Court has jurisdiction under § 9003(a), a district court that has jurisdiction may transfer a civil action to another district or division pursuant to 28 U.S.C. § 1404(a), which Congress enacted "'to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Topiwala v. Wessell*, No. WDQ-11-543, 2012 WL 122411, at *6 n.21 (D. Md. Jan. 12, 2012) (quoting *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)).  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

There is good reason for the parties to litigate this case in Houston, Texas.  Petitioner only chose this forum because he believed that the Child was here, and neither party nor the issues before this Court have any ties to Maryland.  The Mother is under ICE supervision in Texas and cannot travel to Maryland without permission, and the same claims are at issue in the immigration proceedings in that court.  Additionally, there is a direct three-hour flight for the Father to travel to Houston from San Salvador, El Salvador, as opposed to an eight-hour journey,

with a layover or a plane change to reach Maryland. And, almost all witnesses are in Texas.  It is more convenient to litigate in Texas.  Transfer to the Southern District of Texas would be proper under 28 U.S.C. § 1404(a) as well.

## **ORDER**

It is, this <u>18th</u> day of <u>July</u>, <u>2016</u>, hereby ORDERED that, Respondent's Motion to Dismiss or, in the Alternative, to Transfer Venue, ECF No. 31, having been granted, and this case having been transferred to the United States District Court for the Southern District of Texas in Houston to be expeditiously docketed and prosecuted, the Clerk SHALL CLOSE this case.

_____/S/_____
Paul W. Grimm
United States District Judge